Commonwealth ex rel. Corbin, Appellant, *v.*
Banmiller.

Submitted November 18, 1957. Before JONES, C. J.,
BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN,
JJ.

*Robert Corbin*, appellant, in propria persona.

*George W. Atkins*, District Attorney, for appellee.

OPINION BY MR. JUSTICE CHIDSEY, January 16, 1958:
This appeal from the dismissal of appellant's peti-
tion for a writ of habeas corpus in the court below is

filed by a prisoner serving a life sentence at the Eastern State Penitentiary.

Appellant was convicted of murder in the first degree and his sentence was fixed at life imprisonment by the jury on January 5, 1951. Motions for new trial and in arrest of judgment were filed by appellant's counsel three days later. On June 11, 1951, these motions were overruled, and no appeal was taken therefrom. Sentencing followed two weeks later.

On August 21, 1956 appellant filed a petition for a writ of habeas corpus. A hearing was held on September 11, 1956, at which appellant appeared with counsel, and on that day an opinion and order were rendered dismissing the petition. An appeal to this Court was taken from that order on February 14, 1957, and on March 4, 1957 the appeal was ordered quashed because it was taken out of time. Meanwhile a writ of error coram nobis had been filed by appellant on August 9, 1956 and dismissed by an order of the court below entered October 30, 1956.

On March 21, 1957, the present petition for a writ of habeas corpus was filed, and on the same date the petition was dismissed because the questions raised therein were precisely the same questions raised in the earlier petition filed August 21, 1956 and dismissed September 11, 1956, and because they were again raised and dismissed on the writ of error coram nobis dismissed October 30, 1956.

Appellant in this petition filed a "Statement of Questions Involved" setting forth three allegations. The first of these reads: "1. Relator, alleges that he and co-defendant was illegally interrogated for approximately four months, that they were subjected to cruel and unusual punishment, as well as mental torture." In the prior petition, this allegation was raised as follows: "IV (d) That, the relator was interrogated for

approximately four months, and steadfastly protested his innocence, and this was a violation of the relator's constitutional rights under the 8th Amendment of the Constitution of the United States of America, when relator was subjected to 'cruel and unusual punishment,' when he was shuffled from one State Police Barracks to another, and subjected to several punishments, that was not denied by the officials involved, as the notes of testimony will also show, and varify. [sic]"

The second allegation in the present petition was: "2. Relator alleges that it was a 'Denial of due process of law,' and a constitutional right when he was not allowed to have all his witnesses testify, who could prove his innocence had they testified in his behalf." In the earlier petition, part of paragraph IV (e) read: "That, relator was denied the right to contact counsel, denied the right to contact his parents or friends that could have helped him. Relator was not permitted to take the witness stand in his own behalf.[1] One Mrs. Howard Taylor was denied the right to testify for the defendant. See: page 404 of notes of testimony. . . ."

And the last allegation made in the present petition reads: "3. Relator, when on trial for alleged charge of murder, had a constitutional as well as a statutory right of an opportunity to speak on his own behalf before sentence was imposed, and it is readily admitted by York County District Attorney in answer to petition." The previous petition stated in this regard:

---

[1] This statement in the earlier petition was explained by petitioner in his brief on this appeal as follows: "Relator, Not being Educated as to properly prepare a petition made several typographical errors in his petitions, one was that 'he was not permitted to take the Witness Stand'. Relator, Meant his witnesses were not permitted."

"II (a). That, the records, nor the notes of testimony show where, and if the relator was asked by the court, before sentence was passed, 'If there was any reason why sentence should not be passed': . . ."

It is readily apparent that each of the questions raised in the habeas corpus petition filed March 21, 1957 was previously disposed of by the court below in its hearing and order on the August 21, 1956 petition. The appeal in the latter case was quashed, having been filed out of time. The court below was eminently correct, therefore, in dismissing the present petition. To have done otherwise would render endless the number of times an issue might be raised on a petition for a writ of habeas corpus. While a certain laxity in the application of formal legal rules is sometimes in order in a habeas corpus situation, considering the extraordinary nature and purpose of the writ, and the known fact that so many petitions for the writ are drawn by lay persons, we are of the opinion that where the precise legal points being raised have previously been disposed of on a similar petition before a proper court, absent some extraordinary compelling reason, a relitigation of those very issues should not be permitted. In this case petitioner was present at the hearing on his earlier petition, he was represented by counsel, he testified personally and he was given an opportunity to call witnesses. Having already had one opportunity to plead the issues contained in the present petition, no reason appears which would warrant a second hearing thereon.

In order to satisfy ourselves that relief has not been denied this petitioner on purely procedural grounds, we have carefully scrutinized the records, not only that which pertains to this petition, but also the record of the earlier habeas corpus proceeding and the record and notes of testimony of the murder trial itself. A

thorough review convinces us that appellant's petition is without merit.

Appellant's first contention relates to the allegedly illegal detention of himself and of a "co-defendant", apparently referring to one Genevieve Heistand who entered a plea of guilty and whose testimony on behalf of the Commonwealth at appellant's trial was instrumental in procuring appellant's conviction. In his brief, the specific instances of allegedly illegal detention related by appellant refer almost solely to Miss Heistand's incarceration and refer to a period between May 22, 1950 and October 10, 1950 (the date of the arraignment). Aside from noting that Miss Heistand's incarceration in May, 1950 was pursuant to her conviction and sentence on a charge of check forgery and was obviously quite regular, it is basic that *her* detention, if in any way irregular, would in no case properly be the subject of a petition by *appellant*. Although Miss Heistand did make a confession implicating the appellant during the period of her incarceration, that confession was not admitted in evidence at appellant's trial. Appellant's conviction was based on testimony sworn to and given in open court. Miss Heistand's testimony at appellant's trial covers some seventy pages, of which almost fifty are on cross-examination. Any objections to her testimony were arguable at trial or on appeal, and indeed appellant's trial counsel did most vigorously protect appellant's trial rights. The testimony which was no doubt instrumental in convicting appellant was Miss Heistand's direct testimony in open court, based on her own knowledge and observations, relating what she and appellant had done to the victim. There certainly was no valid evidentiary objection to testimony of this caliber, and the court properly admitted it. At any rate, it is clear that such an objection should be raised on motion or

appeal, and that a habeas corpus petition is not a substitute for an appeal or for a motion for a new trial: *Commonwealth ex rel. Marelia v. Burke, Warden,* 366 Pa. 124, 75 A. 2d 593; *Commonwealth ex rel. Ketter v. Day,* 181 Pa. Superior Ct. 271, 124 A. 2d 163.

As to his own detention, petitioner does not relate in what particular it was improper or irregular, but only insists that he was innocent of the crime of which he was convicted. The trial notes of testimony reveal that petitioner was picked up by the York city police and by the State Police, and questioned on several occasions for varying periods of time, on the murder charge and a bad check charge, but no irregularity appears. If any improper incarceration prior to trial had occurred, it should, of course, have been the subject of a habeas corpus petition at that time. This is not a case where under duress or illegal incarceration a forced confession was elicited from the petitioner. On the contrary, he steadfastly asserted his innocence, and no confession or admission was introduced against him.[2] The indictment, trial and sentence of petitioner afford a proper basis for appellant's current imprisonment, and no ground for granting his habeas corpus petition appears.

Appellant's second contention, namely that he was not permitted to have his witnesses testify, is wholly unsubstantiated by any assertion that he was denied the subpoena power in his behalf or that any of the witnesses offered by him in his defense were improperly refused the opportunity to testify. Appellant asserts that he was denied the opportunity to call one Mrs. Howard Taylor. Mr. Taylor, her husband (near

---

[2] Except as may be inferred from the evidence of one of the investigating officers who testified that upon being confronted by Genevieve Heistand and her accusation, appellant replied: "Jenny, I didn't tell on you, why did you tell on me?"

whose property the victim's body was discovered), was called. The defense counsel offered to ask him if he had noticed any damage or disturbance to a hedge on his property through which, it had been earlier testified, the victim's body had been dragged. An objection to this offer was sustained on various grounds, and no error in the ruling was alleged. *Mrs.* Taylor was not called, apparently because of this ruling. Certainly the decision of appellant's counsel not to call Mrs. Taylor, apparently made because of the court's ruling as to the inadmissibility of the offer of her husband's testimony, is not properly the subject of a habeas corpus petition.

Appellant also appends to his petition eight statements, seven of which relate to his whereabouts on the evening of the murder, and the eighth relating to a statement allegedly made by Genevieve Heistand apparently to one of her co-prisoners. Three of the persons whose statements are appended did in fact appear at the trial and testified in appellant's behalf. As to the other five, there is not the slightest indication in the record that their testimony was offered at any stage in the proceedings. Appellant was defended by an attorney of over eighteen years' experience. The court below characterized the defense as vigorous and capable, and indeed our reading of the record confirms this observation. An indication of counsel's vigor is the fact that forty-eight jurors were called on voir dire before a jury was empanelled, and 150 pages of testimony were taken in that connection. The trial lasted four days, about 250 pages of testimony were recorded of which some two-thirds consisted of direct and cross-examination by the defense counsel. Appellant himself testified at length, witnesses were called by him to establish an alibi, and he called witnesses to refute the Commonwealth's case. There is no merit

to his contention pressed here over five years after trial that he was denied the opportunity or the means to call witnesses at his trial.

Petitioner's third contention, that he was denied a right to speak at sentencing, appears contradicted by the following portion of the record: "The Court: Is there anything that you wish to say, Mr. Corbin, or your counsel, before sentence is imposed? The Defendant: No, sir. Mr. Petow [Defense Counsel]: If your Honor please, I might say that the defendant, even since the decision of the jury, has continued to stoutly maintain his innocence. Of course, the matter is no longer the subject of debate. The only point is that he wishes to publicly announce, despite the verdict of the jury, that he feels that such a verdict was not in conformity with what he knows to be the fact. He is before your Honor for sentence."

Even if this segment did not appear in the record, the contention is clearly without merit: See *Commonwealth ex rel. Ashmon v. Banmiller*, 391 Pa. 141, 137 A. 2d 236, handed down this term.

The court below properly dismissed the appellant's petition.

Order affirmed.